IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:24-CR-16 |
| | ) | |
| JOSEPH ALLEN, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND MOTION FOR ACCEPTANCE OF RESPONSBILITY DECREASE

Joseph Allen sexually assaulted a four-year old girl, recorded the assault, and disseminated the recordings. Allen's text messages about the assault are horrifying, and show that she was excited and eager to hurt the little girl. The United States of America, by and through its attorneys, Jessica D. Aber, U.S. Attorney for the Eastern District of Virginia, and Clayton D. LaForge, Assistant U.S. Attorney, respectfully submits Allen should be sentenced to a within-Guidelines sentence of 360 months' imprisonment.

**I.  Procedural Background**

On June 6, 2024, Allen pled guilty to production and distribution of images of minors involved in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) & 2252(a)(2), after having been charged with these offenses, as well as transportation and possession of images of minors involved in sexually explicit conduct. PSR ¶ 1. Sean Halsey, who provided the minor to Allen and recorded the sexually explicit conduct with Allen and the minor, pled guilty to violating Section 2251(a) before Judge Leonard. *See United States v. Halsey*, 2:24-cr-46.

**II.  Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility**

The defendant has assisted authorities in the prosecution of her own misconduct by timely

1

notifying authorities of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. U.S.S.G. § 3E1.1(b). The PSR has properly applied a two-level decrease in her offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater. Accordingly, the government moves the Court to apply an additional one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). This reduction is already reflected in the PSR's offense level calculation.

## III.     Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351-52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S.

at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

**IV.  The Statutory Sentencing Factors**

  A.  The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

Allen, a sex worker, became acquainted with Halsey because he was her drug dealer. They sent each other grotesque text messages about raping the little girl, to whom Halsey had access. Allen's own messages demonstrate her active, eager, and excited participation in the sexual abuse of the four-year old: "As long as I can get her comfortable with sex I'll do anything . . ."; "I would be in the shower getting head every day [from the girl] for real"; "I'm trying to see you with your tongue in it while I'm sucking on [the girl's] nipples," and; "Lol or just clean her out," in response to Halsey's message about concealing indicia of sperm inside the girl. PSR ¶ 15.

In May 2023, Allen and Halsey hurt the girl. Allen, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, stuck her penis into the four-year old, spread her vagina, recorded the imagery of the assaults, and sent them to unknown recipients. PSR ¶¶ 6-7, 72. The girl confirmed Halsey spread her cheeks, and the girl's mother confirmed it was the girl in the imagery. PSR ¶¶ 9-10. Allen would go on to share child sexual abuse material over the internet, including for a profit. *See* PSR ¶¶ 17-20.

The PSR details additional harm to children, such as imagery of Allen holding her penis in the vicinity of an infant's face, along with recordings of minors being penetrated by adults or performing oral sex on adults. PSR ¶ 13.

  B.  The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Allen is a transgender individual with a tragic upbringing. There is no question that there

3

exists—and it is important to squarely acknowledge—a tortured and discriminatory history involving individuals who identify as transgender. Her story deserves significant attention when understanding who Joseph Allen is, because it embodies that tortured history in many respects. *See* PSR ¶¶ 62-65.

It is critical to confront that history head-on. *See United States v. Legins*, 3:19-cr-104, 2020 U.S. Dist. LEXIS 127367, *33 (E.D. Va. July 20, 2020) (Novak, J., finding sufficient grounds existed to vary upward in sentencing an FCI Petersburg guard because he targeted and groomed the transgender inmate population for sexual intercourse). Indeed, Halsey seemingly groomed Allen and at least one another transgender individual. It is equally essential to analyze it—in a context- and defendant-specific inquiry—against the inexcusable, incomparable, and abhorrent sexual assault of a four-year old. *E.g., United States v. Hooper*, No. 21-4220, 2022 U.S. App. LEXIS 10915, *11, *18 (4th Cir. Apr. 21, 2022); 4:20-cr-00018, 2020 U.S. Dist. LEXIS 245052, *2-3 (E.D. Va. Dec. 30, 2020) (Fourth Circuit affirmed life sentence for a child rapist who, as here, used a family member to gain access to a child, have sex with the child, and produce child pornography, although the child was significantly older at 15 years).[1] To be clear, *Hooper* did not involve a transgender individual, but it does show that a person who sexually assaults a minor and produces child pornography of that assault can receive, and perhaps should receive, life imprisonment.

Allen was hurt, worse than any child should ever be hurt. She was also not a reluctant participant in the abuse of the girl. She was not in it just for the money or because she was pressured. Halsey was not a wealthy deviant who tempted Allen with riches in exchange for

---

[1] In *Hooper*, the defendant was also a perjurer whom the Court did not find credible. 4:20-cr-18, ECF No. 157 at 33. There is no allegation of perjury in this matter.

4

hurting the girl. They were acquaintances. Allen did not choose the unspeakable tragedies that befell her youth. But she chose to be there in that room, with the minor victim, and to hurt that little girl. Her own text messages, recounted above, reveal as much. Her story deserves to be considered, and she deserves help for the hardships she never should have had to endure, but that does not change the terrible devastation she jointly inflicted on a four-year old.

There may come a case in which a transgender sex worker's history should be meaningfully accounted for in crafting a charging decision, a sentencing recommendation, or a sentence. After extremely careful consideration, and mindful of the importance and gravity of the historical mistreatment of transgender individuals, this is not an appropriate case. No one—regardless of gender, race, or socioeconomic background—should receive a mitigated sentence when they affirmatively, eagerly, and excitedly plan and sexually assault a little girl.

Mitigating under the specific facts of this case—where the defendant's own actions and words belie anything but an earnest interest in sexually desecrating a child—fails to afford sufficient gravity to the crime, and to account for the defendant's irrefutable ability to make decisions for herself. For example, Allen knew that she could get "low-key fed time" and did not "want to be set up," in sending a photograph of his "niece pussy n shit." PSR ¶ 17. In another chat, Allen sent the imagery of the girl and stated: "I can send you a pussy pic. But frfr u not a cop right." PSR ¶ 18. Allen not only used the girl in the proliferation of her industry, but demonstrated that she knew it was illegal. Her excitement in committing the crime was also unforced by Halsey, as was the selling of imagery and, all told, she possessed at least 179 images and 138 videos of material sexually exploiting children. PSR ¶ 20.

C. <u>The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))</u>

The PSR's calculation adequately reflects a sentence that is sufficient but not greater than

necessary to promote respect for the law and provide just punishment. The abhorrence of the hurt the girl suffered justifies thirty years' imprisonment. It goes without saying that "there are ample policy statements about the horrors inflicted on children when they are molested . . .". *Hooper*, 4:20-cr-18, ECF No. 157 at 35.

The specific offense characteristics are both serious and appropriate to apply. The girl was *significantly* under 12-years old: she was four. *See* PSR ¶ 32. Allen distributed sexual assault imagery over the internet, including for profit; she did not simply record and keep the imagery for her own gratification, and the distribution enhancement is thus applicable. PSR ¶ 33. The offense squarely involved sexual contact, as recounted above. PSR ¶ 34.

The computer enhancement, PSR ¶ 35, is sometimes disregarded in child-exploitation cases in which a recipient otherwise passively uses a computer to possess child sexual abuse material. Allen is far from a passive recipient: the enhancement should apply here because it was the primary vehicle through which Allen was able to capitalize on the sexual assault of a four-year old girl. She used an iPhone to create the irreparable harm to the little girl, and she used the internet to market her horrific work. Now the imagery created and disseminated lives forever in unknown inboxes. The girl has become another face in the NCMEC database.

D. The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

There is no scenario in which Joseph Allen should ever again be physically capable of being near a child. Previously convicted and familiar with the criminal justice system, PSR ¶¶ 47-49, Allen was undeterred by the prospect of legal process in hurting the girl. It is difficult to envision a more egregious breach of trust than a grownup ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ who excitedly chooses to sexually assault a four-year old girl. PSR ¶ 72.

6

E.  The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

The defendant stands to benefit from mental health and sex offender treatment while in the custody of the Bureau of Prisons ("BOP"). It is clear that past interactions with the criminal justice system have not had a lasting impact on Allen. Developments in mental health treatment may benefit her.

F.  The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

Section 2251 carries a mandatory minimum of 15 years' imprisonment and a statutory maximum of 30 years. A term of supervised release is required for a minimum of five years and may be imposed for life. 18 U.S.C. § 3583(k). Regarding special assessments, the defendant should be ordered to pay the $100 standard special assessment for each offense of conviction. Imposition of a special assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA") should be determined by reference to the factors set forth in 18 U.S.C. §§ 3553(a) and 3572. Given the defendant's assets, the United States defers to the Court as to what constitutes an appropriate special assessment in this case pursuant to the AVAA.

G.  The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

Halsey has not yet been sentenced and his PSR has not been disseminated to the parties. Consequently, it is unclear what sentence he will receive or what the Probation Office will recommend. The United States will seek the statutory maximum for Halsey, which is thirty years. There is no disparity from the perspective of the government's positions on sentencing. Factually, Halsey is the one who made the minor available to Allen, a fact which is indisputable. But Allen was an active and eager participant.

Generally, *Hooper*—a life-sentence case involving sexual assault and production of child

sexual abuse material—squarely confirms that a 30-year sentence is not an unwarranted disparity within the realm of child abuse, and it demonstrates that it is also appropriate: Hooper used a child's mother to gain access to her teenage daughter and other minor girls. 2022 U.S. App. LEXIS 10915 at *18 (affirming life sentence even though Hooper never distributed the child pornography, in contrast to the distribution here). Cases outside the Fourth Circuit also demonstrate that there is no unwarranted disparity in imposing a sentence of thirty years following a plea for sexually violating a child. *E.g., United States v. Lewis*, Nos. 22-13993, 23-10530, 2023 U.S. App. LEXIS 31664, *1 (11th Cir. Nov. 30, 2023) (life imprisonment following guilty plea to Section 2422 violation)*; United States v. Etheridge*, No. 22-40516, 2023 U.S. App. LEXIS 21929, *1-2 (5th Cir. Aug. 21, 2023) (defendant pled and sentenced to life for, as here, producing child pornography and enticing a minor); *Prive v. United States*, 2021 U.S. Dist. LEXIS 236206, *16 n.7 (M.D. Fla. Dec. 9, 2021) (same). In summary, not only is a thirty-year sentence not an unwarranted disparity based on the facts of this case, the caselaw and the within-Guidelines recommendation demonstrates that it is appropriate.

H. <u>The Need to Provide Restitution to Victims of the Offense (18 U.S.C. § 3553(a)(7))</u>

Restitution is mandatory pursuant to 18 U.S.C. § 2259. Pursuant to Section 2259(b)(2)(B), the Court must order restitution to each victim in an amount not less than $3000. *Id*.

V. **Supervised Release Conditions**

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government respectfully requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d). In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral

reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions on pages 18 through 20 of the PSR.

In addition to the mandatory and standard conditions of supervised release imposed for felony convictions, the government requests that the Court impose the special supervised release conditions that the U.S. Probation Office recommends. These include the special conditions that the U.S. Probation Office typically requests, and the Court typically imposes, with slight variations, for defendants convicted of CSAM offenses involving the Internet.

## VI. Conclusion

For the reasons stated above, the government respectfully submits that a within-Guidelines sentence of 360 months' imprisonment is sufficient, but not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted:

Jessica D. Aber
United States Attorney
Eastern District of Virginia

By: _____/s/_____
Clayton D. LaForge
Assistant United States Attorney
VA Bar No. 84075
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number – 757-441-3131
E-mail – clayton.laforge@usdoj.gov

# **CERTIFICATE OF SERVICE**

I further certify that on October 3, 2024, I will send an electronic copy of the foregoing to the following:

Nicole Pender, United States Probation Officer.

                                                    /s/
                                          Clayton D. LaForge
Assistant United States Attorney
VA Bar No. 84075
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number – 757-441-3131
E-mail – clayton.laforge@usdoj.gov